UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

OLIVER GEORGE                          CIVIL ACTION

VERSUS                                 NUMBER: 06-0506

DR. WOODS, <u>ET</u> <u>AL</u>.                     SECTION: "I"(5)

<u>ORDER AND REASONS</u>

     Presently before the Court is plaintiff's motion to reconsider the granting of defendant's motion for summary judgment.  (Rec. doc. 55).  The Court DENIES the motion to reconsider because the motion for summary judgment, on its merits, was properly granted.

     The sole remaining defendant herein, Dr. Robert Woods, filed a motion for summary judgment (rec. doc. 47) which the Court granted on July 23, 2007.  (Rec. doc. 52). Judgment was entered thereon on July 26, 2007. (Rec. doc. 53).  Subsequently, the pending motion to reconsider was lodged on August 22, 2007. (Rec. doc. 55).

     The above-captioned matter was originally instituted by plaintiff, <u>pro</u> <u>se</u>, against Dr. Robert Woods and others under 42

U.S.C. §1983 and under Louisiana state law.  The gravamen of that complaint involves plaintiff's claims of deliberate indifference to his serious medical needs while incarcerated in the Jefferson Parish Correctional Center.

The conduct of which plaintiff complained commenced in mid-January, 2005, when he slipped and fell in water which was on the floor of the residential unit where he was housed.  Plaintiff has alleged that he injured his knee when he fell.  He initially complained to two members of the prison medical staff when his knee began to swell and turn purple.  These employees told plaintiff that they would put his name on the list to see the doctor the following day and gave him aspirin for his discomfort.  Plaintiff further advises that, when he saw Dr. Woods, he was again sent back to his residential unit with aspirin "despite the fact that the dislocation of his leg was apparent on inspection." (Rec. doc. 1, p.2).  Plaintiff has further stated in his complaint that he fell again in March, 2005, this time in the bathroom of the residential unit where he was housed.

In his complaint, plaintiff alleges deliberate indifference to his serious medical needs based upon his being scheduled for surgery at Charity Hospital of New Orleans and not being taken there.  Three weeks thereafter, he was allegedly rushed to Charity Hospital when the recreation coach at the jail noticed something

2

was wrong with his knee.  Once at the hospital, plaintiff contends that he was referred to the orthopedic department which scheduled him for surgery.  When he was finally  taken for surgery, plaintiff contends that Dr. Bryant, presumably at Charity Hospital, told him that "because of the delays in getting him to surgery, his knee would not heal properly." (Rec. doc. 1, p. 2).  Plaintiff then alleges that Dr. Woods is responsible for not taking him to surgery in a timely fashion.

Plaintiff also alleges that he was not taken to Charity Hospital for follow-up appointments after his discharge.  However, he does not make clear whom he believes bears responsibility for this alleged lapse.

The Court notes that defendant has presented two arguments in support of his motion for summary judgment.  Defendant first argues that plaintiff failed to exhaust administrative remedies before filing the above-captioned litigation.  Secondly, defendant argues that, based upon a review of the medical records pertaining to plaintiff, deliberate indifference to his serious medical needs has not been established.

The Court may grant summary judgment under Rule 56, Fed.R.Civ.P., when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

3

When evaluating the evidence presented by both sides, the Court must refrain from making "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts ...' as such things '...are jury functions, not those of a judge.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51, 120 S.Ct. 2097, 2110 (2000)(quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986)). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, he may not rest on the mere allegations or denials in his pleadings. <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). Rather, once a properly supported motion for summary judgment is made, the burden shifts to the non-movant who bears the burden of proof at trial to show with "significant probative" evidence that there exists a triable factual issue. <u>Kansas Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of TX</u>, 20 F.3d 1362, 1371 (5th Cir. 1994).

As to the argument advanced by defendant that plaintiff has failed to exhaust administrative remedies before filing suit, plaintiff has acknowledged that there was a grievance procedure in place at the Jefferson Parish Correctional Center while he was incarcerated there. Defendant has presented a statement from the Jefferson Parish Sheriff's Office that there are no grievances filed by plaintiff while housed in that facility. (Rec. doc. 47,

Ex. C). Clearly the filing of such a grievance is the starting point for exhausting the administrative remedy available to inmates lodged in that facility.

Defendant having so argued, it becomes incumbent upon plaintiff to establish that he exhausted the jail procedures for voicing his complaints internally before proceeding with this litigation. However, plaintiff has not come forward with copies of anything which he filed with jail personnel. While another inmate, John Lockett, who has also filed litigation in connection with his incarceration in Jefferson Parish,[1]/ has signed an un-notarized document that two other inmates assisted plaintiff in writing a grievance about his knee, Lockett has not stated that he knows that document was filed by plaintiff. (Rec. doc. 55-6, pp. 10-12). In fact, Lockett specifically states that he cannot say that he saw plaintiff turn the grievance over to jail personnel. (Rec. doc. 55-6, p. 11).

Defendant correctly argues that, pursuant to the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997 e(a), "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

[1]/ See <u>Lockett v. Schultz</u>, 06-CV-507 "B"(5).

administrative remedies as are available are exhausted." The jurisprudence has mandated exhaustion in a case such as this before suit is instituted. <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983 (2002).

Once defendant has raised the issue of failure to exhaust by advising the Court that there are no business records reflecting that plaintiff has completed the administrative remedy procedures in place at the jail, the burden shifts back to plaintiff to refute this allegation. Plaintiff has not done so in this instance. The standard form which inmates use for voicing complaints such as this reflects the fact that inmates are specifically asked to attach copies of their grievances to the petitions which they file. A draft of plaintiff's complaint, on the standard §1983 form, is attached as Exhibit 2 to the motion to reconsider. (Rec. doc. 55-6, p. 5). Thus, plaintiff was on notice before suit was instituted that he needed proof of exhaustion and that the Court expected such proof to include tangible information to establish that this requirement had been met.

The substance of that form effectively informed a potential litigant that, if he/she did not have proof of exhaustion of remedies, steps should be taken to generate such proof. For example, the "ARP" procedure could be instituted at that point, with copies retained, to obtain the information sought by the

6

standard form.   Plaintiff did not follow this course of action. Rather, without giving the names of the individuals to whom the grievances were presented or the content thereof, plaintiff merely alleges that he complied with the administrative process.   The Court finds this insufficient.

Furthermore, even if plaintiff did file an initial grievance, he does not contend that he completed the entire grievance process by taking it to the final step.   A copy of the two-step grievance procedure for the Jefferson Parish Correctional Center is annexed hereto.   Completion of the **entire** process is necessary before exhaustion is deemed to have occurred.   Wright v. Hollingsworth, 260 F.3d 357 (5th Cir. 2001).

The Court is, therefore, of the opinion that defendant's motion for summary judgment should be granted on this basis alone.

However, a review of the medical records, annexed as Exhibit B to the motion for summary judgment, further establishes that defendant's second argument for granting summary judgment is also meritorious. In order to set forth a constitutional claim for deprivation of medical care, a prisoner must allege that he was denied medical treatment and that this denial constituted deliberate indifference to his serious medical needs.   Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976).   The facts underlying a claim of deliberate indifference must clearly evidence

7

the medical need in question and the alleged official dereliction. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)(citing Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981)). With this standard in mind, the Court has carefully reviewed the medical records pertaining to plaintiff's treatment.

The first medical record was generated some time in January, 2005, although the exact date is illegible. (Rec. doc. 47-5, p. 3). In any event, the note documents that plaintiff had been incarcerated for one week at the time and further appears to indicate that he had a prior injury to his right knee when he had fallen down some stairs at an unspecified time, presumably before his incarceration. Because of that prior injury, x-rays taken at Charity Hospital of New Orleans revealed a torn meniscus. (Id.).

Objective findings when seen in the Jefferson Parish Correctional Center medical unit revealed a right knee with no patella because it had been pulled proximally into the quadriceps area. Plaintiff had a slight decrease in his range of motion. The noted assessment was right patella tendon tear (avulsion) and a torn meniscus of the right knee. Naprosyn 500 was prescribed for plaintiff as was a brace. It was noted that plaintiff was already a patient at the Tulane Orthopedic Clinic and that an appointment would be made for him for further evaluation. It was further noted that plaintiff should return to sick call in three to four weeks.

8

(Id.).

The medical records next establish that plaintiff was seen at Charity Hospital in New Orleans on March 1, 2005 where it was noted that plaintiff presented with a probable patellar ligament tear and that he possibly needed surgery.  (Rec. doc. 47-6, p. 7). It was noted that plaintiff was experiencing significant pain for which a prescription was provided to him.  But surgery was not immediately scheduled, the records reflecting that surgery was to be scheduled some three weeks hence for reconstruction and repair of the patella tendon.  NSAID's for pain were recommended.  (Id.).

On March 7, 2005, plaintiff was again seen at Charity Hospital following a further fall that day, presumably at the jail.  It was noted that plaintiff had a displaced patella consistent with a patella ligament tear.  Neuro-vascularly he was found to be intact but it was noted that he needed to undergo surgery, but not on an emergency basis.  It was stated that he should follow up with the orthopedic outpatient clinic within one week.  (Rec. doc. 47-6, p. 5).

Plaintiff was again seen in the jail medical department on March 8, 2005 after he returned from Charity Hospital.  Tylenol was provided and it was noted that he should wear a knee brace.  A follow up appointment was noted for March 15, 2005.  (Rec. doc. 47-5, p. 4).  It was further reflected in jail medical records that

plaintiff had returned from Charity Hospital on March 16th and that his surgery had been scheduled for March 22nd.  It was also noted that he would be given NSAID's for pain and that he should utilize an ace wrap for his knee.  (Rec. doc. 47-6, p. 8).

The surgery did not go forward on March 22nd.  However, plaintiff was seen in the jail medical department on March 25th and again on March 29th, following his return from Charity Hospital that same day.  (Rec. doc. 47-5, p. 5). On April 1, he was again seen in the jail medical department and it was noted then that plaintiff was to have surgery on April 14th but that the date should remain confidential.  (Rec. doc. 47-5, pp. 4, 3). Plaintiff was evaluated yet again at the jail medical department on April 6th and April 13th. At various times that he was seen in the medical department, pain medication was prescribed for plaintiff's use.  (Id.).

Plaintiff was ultimately admitted to Charity Hospital in New Orleans where surgery was performed to the knee and he was discharged back to the jail on April 15, 2005.  (Rec. doc. 47-5, pp. 19-21). On May 4, 2005, personnel in the jail medical department felt that plaintiff might be in need of physical therapy and referred him back to Charity Hospital, where he was seen the following day and referred to the orthopedic department.  (Rec. doc. 47-5, pp. 16, 17). On May 21, 2005, jail personnel referred plaintiff back to Charity Hospital because of pain, stiffness and

numbness to his right knee.  (Rec. doc. 47-6, p. 13). On June 1, 2005, records from Charity Hospital indicate that plaintiff's incision was well healed.  (Rec. doc. 47-5, p. 14). But on June 5th, the jail again referred plaintiff to the orthopedic department of the hospital for pain to his knee.  (Rec. doc. 47-6, p. 12).

Jail records reflect that on July 13th plaintiff had an open area over the knee.  Antibiotics were ordered.  (Rec. doc. 47-5, p. 8) On July 20th, it was noted that plaintiff had a mild infection at the surgical site.  His antibiotics were changed.  (Rec. doc. 47-6, p. 11).  The infection was still being treated as of July 30th.  (Rec. doc. 47-6, p. 10).  Jail records reflect that plaintiff was waiting on a hospital appointment as of August 17th but was still receiving treatment at the jail for his knee.  His flexion and extension were improved at that time. (Rec. doc. 47-5, p. 7).

Plaintiff was seen at Charity Hospital on August 23, 2005, where it was also noted that he should return for a follow-up visit in five weeks.  He was continued on antibiotics.  (Rec. doc. 47-5, p. 10). Plaintiff was additionally seen at the jail on August 24th and 25th.  (Rec. doc. 47-5, p. 6).  At this point Hurricane Katrina appears to have brought about a gap in the medical records presented to the Court.

Whereas plaintiff claims that Dr. Woods is responsible for his not receiving medical care that he would like to have gotten, there

is nothing in the medical records to indicate who administered treatment at the jail. Most of the signatures are illegible on those documents. Nor does plaintiff suggest what Dr. Woods' position at the jail might have been. But, suffice it to say, the medical records indicate that plaintiff did, in fact, receive treatment for his knee problems on numerous occasions while he was housed at the Jefferson Parish Correctional Center.

Of particular note is the fact that doctors at Charity Hospital of New Orleans did not see an immediate need to expedite surgery to plaintiff's knee when he was first seen there on March 1, 2005. Had that been necessary, he could have been immediately admitted and had the surgery performed. It is not contended that anyone from the Jefferson Parish Medical Department hindered such action, had doctors at Charity felt it was necessary. Rather, the medical department appears to have facilitated the hospital in performing the procedures which plaintiff needed.

The Court further notes that this matter was set for pre-trial conference on July 23, 2007. Plaintiff had filed a supplemental and amended witness and exhibit list on April 20, 2007. (Rec. doc. 38). That document failed to contain the names of any expert witnesses who could have testified that Dr. Woods or any other person associated with the medical program violated the accepted standard of care in the medical profession for treatment of a

patient with plaintiff's condition. Lacking such testimony, plaintiff would be unable to prove a medical malpractice case at trial against Dr. Wood, much less a claim of deliberate indifference to his serious medical needs.

Furthermore, although plaintiff stated in his original complaint that Dr. Bryant advised him that the delay in his receiving surgery would prevent his knee from healing properly, the Court notes that Dr. Bryant is not listed on plaintiff's witness list, either in an expert or factual capacity. Clearly, plaintiff would not be allowed at trial to testify to such hearsay. Rather, Dr. Bryant, personally, would have to so state, if, in fact, he told plaintiff anything such as plaintiff remembers.

Accordingly, the motion for summary judgment filed herein on behalf of Dr. Woods was properly granted for the reasons assigned by the Court on July 23, 2007. For the additional reasons set forth hereinabove, the Court declines to reconsider the original granting of the motion.

New Orleans, Louisiana, this  8th  day of ___February___, 2008.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE